**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| **NANCY P. HAGA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 04-0172-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| **IKON Office Solutions, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court in the above-entitled matter are Defendant Ikon Office Solution's motion for summary judgment (Docket No. 36) and Plaintiff Nancy Haga's motion to strike exhibits (Docket No. 45) and motion to exclude testimony (Docket No. 59). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Factual Background**

Plaintiff Nancy Haga was employed by Defendant IKON Office Solutions, Inc. ("Ikon") as a sales representative in the Boise area. Ms. Haga began her employment with Alco Standard Corporation ("Alco") in 1996 as a major account sales representative. Ikon took over Alco's operations. In October of 2002, Ms. Haga was promoted to the position Strategic Account

Executive ("SAE") for Ikon. She was promoted by VP-General Manager Greg Aiken ("Aiken") or Sales Manager Shawn Wiseman ("Wiseman"). As an SAE, Ms. Haga was responsible for developing and selling management services. Some of her clients were Simplot, Intermountain Gas Company and Micron.

In the first quarter of fiscal year 2003, Ikon downsized the number of SAEs nationwide. Specifically, Ikon reduced the number of SAEs in the Mountain West Marketplace from 4 to 2 and the two remaining positions were in Salt Lake City as the majority of Ikon's management services accounts in the area were located in or around Salt Lake City. Plaintiff did not ask or indicate she wanted to transfer to one of the remaining SAE positions in Salt Lake City. Due to the reductions, Plaintiff's position as well as that of another male SAE were eliminated. Plaintiff was moved to the position of Management Services/Major Account Executive ("MSMAE" also referred to as "MS/MAE" or "MAE/MS"). Although Ms. Haga's pay was reduced when she became a MSMAE, her responsibilities, account assignments and incentive plan remained the same. Later, Ikon dropped the "MS" designation from all of its MSMAEs nationwide, so the new name for this position was "MAE".

For every position at Ikon, there is a written compensation plan for employee commissions and other incentive payments. Plaintiff claims her involvement on certain sales to the Boise Schools District were not properly compensated and she did not receive an over-achievement incentive payment of between $30,000 to $40,000. Plaintiff complained to Aiken about not receiving her incentive payment. Two other employees also complained about their compensation from the Boise Schools District contract.

**MEMORANDUM ORDER - PAGE 2**

Ikon maintains through the testimony of Aiken that because the gross profit level obtained on the contract was not greater than 15%, Plaintiff was not eligible for a commission. Ikon also maintains Plaintiff was not entitled to the achievement or overachievement incentive payment regardless if the incentive is calculated for a SAE or an MSMAE as she did not meet her fiscal year quotas for both equipment sales and management services. It is undisputed that Ikon did offer Plaintiff an incentive outside the written compensation policy and she accepted the one-time cash payment of $2,500 for the Boise Schools District contract.

Plaintiff believes the failure to pay the incentive payment was due to the fact she was a female. Stephanie Bergey Gornichec, Ikon's Director of Financial Operations in Salt Lake City during 2003 indicated in her affidavit that Aiken stated his beliefs that men should make more money that women because men were responsible for taking care of their families. Tina Sparrazza was the Supervisor of Commissions for Ikon in Tempe, AZ during 2003. She testified in her deposition that she believed Plaintiff should have received the overachievement bonus and revenue credit for the Boise Schools contract, however, Ms. Sparrazza did not take into account Plaintiff's actual equipment sales and management services quotas for the fiscal year.

Ikon has a Equal Employment Opportunity Policy which prohibits unlawful sex discrimination. The policy instructs employees to notify the Human Resources department or your immediate manager immediately and provides a toll-free hotline to report suspected violations of the policy. Plaintiff received a copy of Ikon's EEO Policy during her employment.

Ms. Haga was a good sales representative and had received numerous sales awards. She served her clients well and was motivated to try to sell Albertson's equipment. While she started off in the negotiation process with Albertson's, it appears from the record, that Albertson's requested

she not work on the proposal at some point. The exact reason for this request from Alberston's is unclear from the record. Regardless, Ikon removed her from the team of employees working to sell Albertson's product and services. Ultimately, Ikon signed a contract with Albertson's but it was signed months after Plaintiff had been removed from the sales team. Plaintiff received no compensation bonus for the Albertson's deal.

In August of 2003, Aiken told Plaintiff she could no longer have any dealings with accounts upon which she had been the point of contact and Plaintiff understood Aiken made this decision based on Plaintiff's gender. In September of 2003, Wiseman and Jann Simpson, National Account Manager, were brought in on the Albertson's deal. In October 2003, Plaintiff was reprimanded for endorsing a plan whereby a California Sales Representative would receive 100% of the commissions due him on some Albertson's contracts such representative had signed in California.

In 2003, it is undisputed that Plaintiff was not meeting her MAE sales quota. In 2004, Plaintiff was demoted to the position of Account Executive ("AE") which had a reduced quota, but also a reduced base pay. Plaintiff's position was six or seven steps below the SAE position she had held six months earlier. Plaintiff was given a "ramp-up" period which reduced the expected quota until her fourth month in the position and her negative balance on her fiscal year quota was eliminated so she started the new position with a clean slate. The decision to demote Ms. Haga was made by Aiken based on the recommendation of Wiseman and Director of Sales, R. J. Hines. Around the same time, several male employees in the Mountain West Marketplace were also demoted from MAE to AE positions for performance reasons. Plaintiff's base salary as a SAE was $55,000 and her base salary as an AE was $31,100.

Plaintiff's initial supervisor was Sales Manager Shawn Wiseman. In January, 2004 Mr. Wiseman was demoted to an MAE and Jeff Smiley took over as Plaintiff's supervisor. Ms. Haga's working relationship with Mr. Wiseman deteriorated during 2003. Mr. Wiseman wanted Ms. Haga to quit and not accept the entry-level AE position. He told Ms. Haga he thought it would be a good idea for her if she sold things on eBay like his wife did. Less than two weeks later, Wiseman replaced Ms. Haga as MAE. Wiseman closed the Albertson's deal and took over all of Ms. Haga's other accounts.

In February 2004, Plaintiff and her supervisor, Jeff Smiley, went on a sales call together. When asked why she was being forced out of the company, Mr. Smiley told Plaintiff that she was being punished. Ms. Haga understood this to mean that she was being retaliated against for filing charges of discrimination with the Idaho Human Rights Commission on January 26, 2004. Ms. Haga has provided the affidavits of other women who allege Aiken treated men differently than women.        Ms. Haga maintains she felt humiliated and demeaned in the AE position knowing that her commissions were going to Wiseman. She was informed she needed to attend a training session for Ikon's newly hired sales personnel with little sales experience. She had taken the course years earlier. She did not attend the training and she resigned from the company. Karen Walton was also an employee of Ikon and indicates in her affidavit that the men in the office were extremely hostile towards Ms. Haga and that the men wanted Ms. Haga out of the office.        It is undisputed that Ikon has decreased the number of employees nationwide from 300 from 250 in the past four years.

On March 5, 2004, Plaintiff filed a complaint for age discrimination and for her wage claim regarding the "overachievement incentive" she believed she was entitled to have received from Ikon.

**MEMORANDUM ORDER - PAGE 5**

The case was removed to Federal court by Defendants.  In May and June of 2004, Plaintiff took an extended vacation.  On June 22, 2004, the day she returned from vacation she submitted a letter of resignation.

After obtaining right to sue notices, Plaintiff filed her job discrimination complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-5 et seq. ("Title VII") and the Idaho Human Rights Act, Idaho Code § 67-5901 et seq. ("IHRA") on February 15, 2005.  The two related federal court cases were consolidated by this Court on March 15, 2005 and the parties stipulated to the dismissal of the age discrimination claims in the first complaint.  Plaintiff's remaining claims allege that Defendants discriminated against Ms. Haga on the basis of her sex, constructively discharged her, retaliated against her for opposing unlawful practices and failed to pay her wages due and owing under her compensation agreement.

## Standard of Review for Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.  See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-

moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM ORDER - PAGE 7**

light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

**Analysis of Summary Judgment Claims**

Plaintiff has five causes of action remaining:  a sexual discrimination claim, a sexual harassment claim, a constructive discharge claim, a retaliation claim and a wage claim.  The same standards of proof applicable in Title VII actions govern actions under the IHRA so the Court will not separately analyze Plaintiff's state law claims of discrimination.  See Hoppe v. McDonald, 644 P.2d, 355, 358 (Idaho 1982).  The Court will address each claim separately.

1.  Sexual Discrimination.

Ms. Haga alleges a disparate treatment sexual discrimination claim.  To survive summary judgment on her disparate treatment claim, Ms. Haga must establish that her job performance was satisfactory and provide evidence, either direct or circumstantial, to support an inference that her termination was discriminatory.  "The amount of evidence [Plaintiff] must produce is 'very little,' so long as it is more than 'purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars.'"  Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004) (citing Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).

The Court then analyzes the evidence presented under the McDonnell Douglas burden-shifting framework.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 668 (1973).  Plaintiff has the burden of establishing a prima facie case by showing: "(1) she is belongs to a protected class; (2) she was performing according to her employer's legitimate

**MEMORANDUM ORDER - PAGE 8**

expectations, (3) she suffered an adverse employment action; and (4) other employees with qualifications similar to her own were treated more favorably." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. 1817).

> Upon these showings, the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employee's termination. If the defendant meets this burden of production, any presumption that the defendant discriminated "drops out of the case," and the plaintiff must then show that the defendant's alleged reason for termination was merely a pretext for discrimination. The burden of persuasion, as opposed to production, however, remains with the plaintiff at all times. A plaintiff "may prove pretext 'either directly or by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"
> The evidence proffered can be circumstantial or direct. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial . . . . Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption." "[W]here direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence . . . to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence . . . must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [a prohibited ground]."

Bodett v. Coxcom, 366 F.3d 736, 743 (9th Cir. 2004)(citations omitted).

In a mixed motive sex discrimination claim, Plaintiff needs to establish that the sex discrimination was one factor in the discrimination, but not the only factor. Stated another way, Plaintiff need only demonstrate that sex was a "motivating factor" in the decision made by the employer. See Cordova v. State Farm Ins. Cos., 124 F.3d 1145 (9th Cir. 1997).

For purposes of the motion for summary judgment, the Court finds Plaintiff has established her prima facie case of sexual discrimination. While Plaintiff has not offered direct evidence of discriminatory intent, she has set forth sufficient evidence to satisfy the four prong McDonnel

Douglas test to allow unlawful discrimination to be presumed. In this case, Plaintiff has established she belongs to a protected class, she had worked for Ikon for a number of years and had received numerous sales awards and was promoted based on her performance such that she was meeting her employer's expectations, she suffered an adverse employment action by being demoted and having her clients taken away and other employees with qualifications similar to her were treated more favorably.

Defendant Ikon responds with legitimate business reasons for the reduction of SAEs in the company and that Plaintiff did not request to apply for one of the SAE positions in Salt Lake City. Ikon claims Ms. Haga was removed from the Albertson's deal team at the request of Alberston's and such was not due to her gender as Jann Simpson was a female on the Albertson's team. Defendant also responds that the additional demotion to AE was due to Plaintiff's poor performance and that is why her clients were given to other MSMAEs.

The Court finds the burden now shifts back to Plaintiff to establish Ikon's articulated non-discriminatory reasons for demotion, being taken off the Albertson's deal and having her clients taken away were pretextual. Plaintiff claims that pretext can be established from the record by showing the sex discrimination was one factor in the discrimination, but not the only factor. Plaintiff argues her sex and aggressive female attitude were a "motivating factor" in the decisions made by Aiken not to pay her an incentive payment on the Boise Schools District contract, the reason Aiken treated Ms. Haga differently from other male sales representatives, the reason she was demoted while other male employees were allowed to stay as SAEs, the reason her lucrative accounts were given to Wiseman, the reason she was taken off the Albertson's deal and why Aiken made statements generally supporting the idea that men should make more money than women.

**MEMORANDUM ORDER - PAGE 10**

In viewing the facts in a light most favorable to Plaintiff, the Court finds genuine issues of material fact exist as to the motives of the employer and summary judgment on the claim of sex discrimination is denied.

2. Hostile Work Environment

There are two types of sexual harassment prohibited by Title VII.  "Quid pro quo" when a job action is dependent on the provision of sexual favors and "hostile environment" sexual harassment when the work environment is unpleasant and unacceptable based upon the considerations of sex (e.g. jokes, language, unwanted touching).  Hostile work environment claims may also be broken down further depending on whether a tangible job detriment is or is not present.  A tangible job detriment includes, but is not limited to, a reduction in pay, demotion, discharge or failure to promote.  In the present case, Plaintiff does not allege quid pro quo sexual harassment, only a hostile working environment with a tangible job detriment.[2]

In  Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries v. Ellerth, 524 U.S. 742 (1998), the Supreme Court ruled that in any situation where sexual harassment by a supervisor with immediate or successively higher authority results in tangible detrimental employment action, the employer is strictly liable for that action, even if the employer or its management had no knowledge the harassment was taking place.

---

[2]To the extent the Plaintiff's claims could be interpreted as a hostile work environment without a tangible job detriment, the Court agrees with Defendant that the employer in this case would be entitled to an affirmative defense since it is undisputed Ikon has a policy against sexual harassment and correcting harassing behavior, Ms. Haga was aware of the policy and there is no evidence in the record indicating Ms. Haga used or attempted to use the existing company policy to complain about the hostile working environment.  See Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries v. Ellerth, 524 U.S. 742 (91998).Therefore, the complaining employee acted unreasonably and the Defendant would be entitled to the affirmative defense as a matter of law.

**MEMORANDUM ORDER - PAGE 11**

In establishing a prima facie hostile work environment claim under Title VII, the employee must raise a triable issue of fact as to whether (1) she was subjected to verbal or physical conduct because of her sex, (2) conduct was unwelcome, and (3) conduct was sufficiently severe or pervasive to alter conditions of her employment and create an abusive work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). In Harris, the Supreme Court detailed factors to consider: frequency and severity of the conduct; whether the conduct was physically threatening or humiliating as opposed to a mere offensive utterance and whether the conduct unreasonably interfered with an employee's work performance and determined harassment is prohibited by both co-workers and supervisors. The Ninth Circuit has held "the working environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing Harris, 510 U.S. at 21-22). The "objective" portion is based on the perspective of the reasonable victim. Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) (citing Ellison v. Brady, 924 F.2d 872, 879, (9th Cir. 1991)). The Court examines the totality of the circumstances to determine whether a plaintiff's allegations rise to the level of a colorable claim of a hostile work environment. "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Id. at 926.[3]

Plaintiff alleges she was treated differently and more harshly because she is a woman and that hostile comments were regularly made to her by fellow employees and supervisors. Defendant

---

[3]"Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Manatt v. Bank of Am., NA, 339 F. 3d 792, 798 (9th Cir. 2003) (citations and quotation marks omitted). See also Vasquez v. County of Los Angeles, 349 F. 3d 634 (9th Cir. 2004).

**MEMORANDUM ORDER - PAGE 12**

alleges the alleged conduct is insufficient and lacks the severity required to qualify as creating a hostile work environment based on sex.

In this particular case, the question for the Court is whether the harassment was sufficiently severe and pervasive. The record before this Court indicates genuine issues of material fact exist regarding the nature and alleged severity of the conduct towards Ms. Haga in the Ikon office beginning in 2003 and continuing into 2004. While the Court acknowledges not all harassing conduct is a violation of Title VII, the testimony and affidavits of Ms. Haga and other female employees supports the denial of summary judgment at this stage in the litigation. After the Court hears all the evidence on this claim, the Court will be able to analyze whether the alleged conduct was sufficiently severe or pervasive to alter conditions of Ms. Haga's employment and create an abusive work environment. Accordingly, summary judgment on this claim is denied.

3. Constructive Discharge Claim

Plaintiff claims she was constructively discharged when the working conditions deteriorated, as a result of discrimination, to the point where they became "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1246, 32 Cal. Rptr.2d 223, 876 P.2d 1022 (1994); see also Watson v. Nationwide Ins. Com., 823 F.2d 360 (9th Cir. 1987). Defendant maintains that since the hostile working environment claim should fail, the claim for constructive discharge should also fail. "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of

constructive discharge: conditions so intolerable that a reasonable person would leave the job." Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000).

While the Court agrees with the law presented by the parties, there exist genuine issues of material fact regarding the claim for a hostile work environment that are interwoven with the claim for constructive discharge. In viewing the facts presented in a light most favorable to the Plaintiff, the claim for constructive discharge survives summary judgment.

4.  Retaliation Claim

To make out a prima facie case of retaliation under Title VII, employee must establish that: (1) she engaged in protected activity, such as filing a complaint alleging sexual discrimination, (2) employer subjected her to adverse employment action, and (3) causal link exists between protected activity and adverse action.

In this case, Plaintiff alleges that her "punishment" and demotion to AE at the end of December 2003 or beginning of January 2004 was in retaliation for her claims of discrimination. This claim fails as a matter of law as Plaintiff did not file her claim with the Idaho Human Rights Commission until January 26, 2004 after the tangible employment action had been taken. Therefore, there can be no causal link between the protected activity and the adverse employment action in this case.

5. Wage Claim

Ms. Haga maintains she was not paid an overachievement incentive bonus of up to $40,000 for her participation in the Boise Schools District contract. She seeks the amount of the bonus plus treble damages pursuant to the Wage Claim Act.

**MEMORANDUM ORDER - PAGE 14**

Pursuant to the written compensation plan, the Court finds as a matter of law Plaintiff was not entitled to the achievement incentive bonus. The Court finds there are no genuine issues of material fact that prohibit summary judgment from being granted in Ikon's favor.

Plaintiff alleges the discovery completed in these lawsuits has produced evidence the gross profit margin on the Boise Schools District contract was between 10.5% and 19.9%. However, Plaintiff concedes in her response to the summary judgment motion, that she was not entitled to a commission because the profit margin was less than 15%. The record reflects the gross margin for the contract was 13.38%, so the Court agrees no commission was due to Ms. Haga.

Furthermore, under the written compensation plan and even assuming Ms. Haga was an SAE instead of a MSMAE at the time the Boise Schools District contract was executed, Plaintiff did not meet the required quotas to be eligible for the incentive bonus. The general lines sales representative received 100% of the equipment revenue credit and equipment commissions and the SAE or MSMAE receives 100% of the management services revenue credit and 75% of the management services commissions provided the management services meet the 15% threshold for gross profit on the management services portion of the contract.

SAEs are eligible for achievement and/or overachievement incentives <u>only</u> if they meet their quarterly and/or yearly quotas respectively. Specifically, SAEs qualified for a quarterly quota achievement incentive calculated at 2% of their quarterly equipment revenue if they satisfy <u>both</u> their equipment and their management services quota for any given quarter. The same requirement existed for fiscal year achievement incentives. Where both of these quotas are met, the achievement or overachievement incentive payment is calculated based solely on the SAE's equipment revenue, not on the SAE's management services revenue.

**MEMORANDUM ORDER - PAGE 15**

Finally, it is undisputed by Plaintiff that she served in an "overlay" position on the Boise Schools District contract. Under the compensation plan, SAE overlays are not entitled to equipment revenue credit for the contract as such equipment credit goes only to the general line sales representative.

The Court finds Plaintiff has not offered any evidence that she met both the equipment and management services quotas for the fiscal year. Accordingly, she was not entitled to the claimed incentive bonus set forth in the SAE or MSMAE compensation plans on the Boise Schools District contract and her wage claim fails.

### ORDER

Being fully advised in the premises, the Court hereby orders that:

1) Defendant's motion for summary judgment (Docket No. 36) is GRANTED IN PART AND DENIED IN PART consistent with this Memorandum Order. The Plaintiff's sex discrimination claim, claim for hostile work environment, and constructive discharge claim will proceed to trial, however, Plaintiff's retaliation claim and wage claim are dismissed.

2) Plaintiff's motion to strike exhibits (Docket No. 43) is DENIED.

3) Plaintiff's motion to strike testimony (Docket No. 59) is DENIED.

4) The trial in this matter will be moved to start one day early on Monday, November 13, 2006 at 9:00 a.m. in Boise, Idaho.

DATED: **November 1, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - PAGE 16**